UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Kenneth J. Malone, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action H-04-3940 |
| Bodycote Heat Treating a/ka | § | |
| Linberg Heat Treating a/ka | § | |
| Houston Heat Treating, | § | |
| | § | |
| *Defendant*. | § | |

**Order Adopting in Part Memorandum & Recommendation**

Pending before the court are the parties' objections, Dkts. 132–34, to Magistrate Judge Johnson's Memorandum and Recommendation issued June 21, 2007. Dkt. 131. After carefully considering the parties' objections, the record evidence, and the applicable law, the Magistrate's opinion will be ADOPTED IN PART. As a result, defendant's motion for summary judgment (Dkt. 106) will be GRANTED IN PART and DENIED IN PART.

**I. Background**

Before explicating the standard of review for a magistrate's memorandum and recommendation, the court simply notes that another recitation of the facts is unnecessary in considering the defendant's motion for summary judgment; Magistrate Judge Johnson's opinion sets forth a fulsome and complete description of the factual background related to this action.

**II. Standard of Review**

In considering a magistrate judge's opinion, the district court must engage in a *de novo* review of its factual findings and legal conclusions, insofar as they are timely challenged by an

affected party.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).  For an objection to be timely, a party must serve and file the objection in writing to any finding or recommendation within ten days after being served with a copy of the magistrate's decision.  *See* § 636(b)(1)(C).  The district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  *See id.*

### III. ANALYSIS

Both parties have objected to several of the magistrate's recommendations.  For purposes of clarity, the court will address defendant's objections first, followed by an examination of plaintiff's objection.

### A. DEFENDANT'S OBJECTIONS

Defendant Bodycote Thermal Processing ("Bodycote") objects to the magistrate's decision recommending the denial of its summary judgment motion on two claims—disparate pay and retaliation—actionable under 42 U.S.C. § 1981.  The court will address each claim in turn.

*1. Disparate Pay*

**a. Background**

Plaintiff was hired by Bodycote in May 1997 and discharged on June 4, 2002.  Dkt. 131 at 2, 11.  More than four years after his termination, plaintiff filed his third amended complaint asserting a claim for wage discrimination.  Dkt. 90 (filed August 10, 2006).  He stated that "during his tenure with Bodycote, plaintiff was . . . given below average wages and pay raises due to his race."  *See Id.*, ¶ 5.4.  In previous pleadings plaintiff made general accusations about paycheck tampering, claiming that he was denied pay because of time calculations "inconsistent with actual hours worked."  *See, e.g.*, Dkt. 1, Ex. 1 at 2.  Notably, however, at no time before filing his third

amended complaint did plaintiff make even a general allegation that he was denied any compensation on the basis of race.

As a threshold matter, defendant argues that plaintiff's disparate pay claim is barred by the applicable limitations period because plaintiff did not allege a claim for wage discrimination until more than four years after leaving Bodycote. *See* Dkt. 133 at 4–7. Plaintiff responds that he has alleged numerous instances of pay discrimination within the limitations period because his previous pleadings filed in 2003 and 2004 asserted general allegations of pay discrimination. *See* Dkt. 136 at 14–16. In the alternative, plaintiff contends that the discovery rule applies to his claim and tolled the limitations period until the time he learned of a possible wage discrimination claim upon obtaining counsel in 2006. *Id.* After considering all of these arguments and the applicable law in this circuit, the court agrees with the defendant.

**b. Analysis**

*1. § 1981 and the* Patterson *Decision*

Congress passed the Civil Rights Act of 1866, 42 U.S.C. § 1981, in April of that year, forbidding racial discrimination in the making and enforcing of contracts by all U.S. citizens "without regard to any previous condition of slavery or involuntary servitude." *See* 14 Stat. 27. Although this enactment did not explicitly reach at-will employment relationships, the Supreme Court has held that "§ 1981 affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60, 95 S. Ct. 1716 (1975); *see also McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285, 96 S. Ct. 2574 (1976).

After the Court's holding in *Johnson*, many lower courts extended this principle to find that individuals could bring a claim for racial harassment affecting the conditions of employment or

3

which produced a discriminatory discharge. *See, e.g.*, *Rowlett v. Anheuser-Busch, Inc.*, 832 F.2d 194, 201–03 (1st Cir. 1987) (discrimination in training, wages, and discharge); *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1422 (7th Cir. 1986) (employer violated section 1981 by engaging in "a vicious campaign of racial harassment" and by discharging employee in retaliation for employee's discrimination complaint); *Taylor v. Jones*, 653 F.2d 1193, 1198–99 (8th Cir. 1981) (holding employer liable for workplace atmosphere "heavily charged with racial discrimination," including pervasive use of racial slurs and epithets, physical violence, and hanging of a noose to intimidate black employees). However, despite the courts of appeals' uniform construction of § 1981, the Supreme Court in 1989 overturned these holdings and limited § 1981's reach to cover only discriminatory conduct "at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Patterson v. McLean Credit Union*, 491 U.S. 164, 179, 109 S. Ct. 2363 (1989), *superseded by statute*, Civil Rights Act of 1991, PUB. L. NO. 102-166, 105 Stat. 1071, 1071–72, *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372–73, 124 S. Ct. 1836 (2004).

    Nevertheless, Congress would have the last word, and two years later it passed the Civil Rights Act of 1991 ("CRA"), purportedly overruling *Patterson*'s interpretation of § 1981's "make and enforce contracts" language. Under its terms, the CRA reinstated an individual's right to sue

under § 1981 for racial harassment and other discriminatory conduct after formation of a contract.[1]

Section 1981, as amended by the CRA, reads in pertinent part:

> (a) Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory *to make and enforce contracts*, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981 (2000) (emphasis added). After passage of the CRA, President George H.W. Bush signed the bill into law on November 21, 1991. *See* 105 Stat. at 1074. In sum, after that date, an individual possesses a cause of action pursuant to § 1981 against an employer for racially discriminatory conduct affecting "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b); *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1374 (5th Cir. 1992) (holding that § 101 of the CRA, which amended § 1981, does not have retrospective application and *Patterson*'s limited holding is applicable to all conduct predating the enactment of the CRA).

---

[1] As an aside, the Act not only restored § 1981's prohibition of racial harassment but also reinvigorated certain employment antidiscrimination protections the Supreme Court had curtailed in a series of decisions narrowly interpreting Title VII of the Civil Rights Act of 1964. *See* Civil Rights Act of 1991, PUB. L. NO. 102–166, 105 Stat. 1071 (overruling statutory interpretations by the Supreme Court in, *inter alia*, *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S. Ct. 2363 (1989); *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S. Ct. 2115 (1989); and *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775 (1989)).

*2. § 1658's Application to § 1981*

Moreover, during the debate of these substantive law issues in the early 1990s, Congress passed a "catch-all" four-year statute of limitations applicable to a narrow class of federal statutes. Judicial Improvements Act of 1990 § 313, 28 U.S.C. § 1658. Under the plain language of § 1658, the four-year limitations period applies only to those "civil action[s] arising under an Act of Congress enacted after" December 1, 1990. *See id.*; *Jones*, 541 U.S. at 375. All other causes of action which arise under a pre-1990 Act would continue to be governed by the limitations period imposed by federal statutory or decisional law. *Jones*, 541 U.S. at 377–78. Here, because § 1981 was substantially amended in 1991, but in existence well before 1990, the limitations period applicable to that statute became the subject of a fierce debate in the circuit courts. Some courts refused to apply § 1658 to any cause actionable under § 1981, regardless of its overhaul in 1991. Other courts applied § 1658 to § 1981(b), which created a cause of action for racial harassment after December 1, 1990, even though the CRA amended a pre-existing statute. *Compare Zubi v. AT&T Corp.*, 219 F.3d 220, 224 (3d Cir. 2000) ("It is, thus, only when Congress establishes a new cause of action without reference to preexisting law that § 1658 applies."), *overruled by Jones*, 541 U.S. at 375, *with Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1190 (10th Cir. 2002) (holding that § 1658 applies to any § 1981 cause of action made possible by the Civil Rights Act of 1991, but concluding that actions under the original version of § 1981 were not subject to § 1658's four-year limitations period).

In 2004, the Supreme Court resolved the circuit split and created a dual limitations period applicable to § 1981. *See Jones*, 541 U.S. at 383. The court held that if the plaintiff's cause of action arose under the original version of § 1981, the district court should apply "the state law of

limitations governing an analogous cause of action." *See Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483–84, 100 S. Ct. 1790 (1980) (stating that the general absence of federal statutes of limitations is a "void which is commonplace in federal statutory law"). In Texas, the analogous cause of action for personal injury would require the application of a two-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 2002). On the other hand, if a plaintiff's cause of action was only made possible under a post-1990 enactment, including the CRA § 101, § 1981(b), then the four-year limitations period will govern. *See Jones*, 541 U.S. at 383.

Therefore, in assessing whether plaintiff's claim for wage discrimination was timely filed in this case, the court must first determine whether that cause of action was actionable under the original version of § 1981. In *Patterson*, the Court found that the petitioner's claim for discrimination in the form of wage increases was not actionable under § 1981 because it did not involve "either a refusal to make a contract . . . or the impairment of [plaintiff's] ability to enforce . . . established contractual rights." *Patterson*, 491 U.S. at 178–89. As such, a disparate pay claim more naturally relates to discrimination in the "benefits...and conditions of the contractual relationship," *see* § 1981(b), and only became actionable after the CRA's passage in 1991. Thus, plaintiff's disparate pay claim in this case is subject to the catch-all limitations period of four years and is only actionable if it was filed within that time after accrual.[2] *See Jones*, 541 U.S. at 383.

---

[2] The court recognizes that any racially discriminatory treatment in setting the plaintiff's original wage at formation may have been actionable under the old version of § 1981, and thus subject to a two-year statute of limitations. *See Jones*, 541 U.S. at 377–78. However, this claim would generally be barred because Malone's employment began in 1997, much longer than two years before this suit was filed. The court will thus globally address any wage discrimination claim under the longer, four-year limitations period for purposes of the defendant's motion.

At the latest, plaintiff's cause of action accrued on June 4, 2002, the date of his separation from employment with the defendant. *See* Dkt. 131 at 11. Despite the plaintiff's argument that his initial pleadings raised a pay discrimination claim, the court finds that he did not put the defendant on notice of this claim until he filed his third amended complaint on August 10, 2006. *See* Dkt. 90. Clearly then, unless plaintiff can demonstrate an applicable exception to the limitations period to permit tolling, the plaintiff's disparate pay claim must be dismissed as time-barred.

One such exception is the discovery rule, which tolls the limitations period until the time when a plaintiff discovers or reasonably should discover a latent injury. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 n.7, 122 S. Ct. 2061 (2002). Plaintiff argues that § 1981's limitations period should be subject to this rule and that the statute should have been tolled until he learned of a possible claim for wage discrimination upon acquiring legal counsel in May 2006. *See* Dkt. 136 at 16–17. The plaintiff points out that the Supreme Court has explicitly reserved judgment on whether this exception is applicable to claims of intentional discrimination. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2177 n.10 (2007). However, despite the high court's inaction, the Fifth Circuit has clearly held that a plaintiff's discrimination claim accrues on the date of the discriminatory act, not some future day when the plaintiff knows or should know that the act may have been motivated by discriminatory animus. *See Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992) ("To allow plaintiffs to raise employment discrimination claims whenever they begin to suspect that their employers had illicit motives would effectively eviscerate the time limits prescribed for filing such complaints."); *see also Chapman v. Homco*, 886 F.2d 756, 758 (5th Cir. 1989) (holding that tolling of the two-year statute of limitations period was not warranted in an age discrimination case); *Merrill v. S. Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986) (emphasizing that the limitations period begins to run upon notice of the discriminatory *act* to the plaintiff, and that

8

a discovery rule otherwise focused on the act's *motivation* would be unmanageable because "[i]t might be years before a person apprehends that unpleasant events in the past were caused by illegal discrimination.").

Pursuant to circuit precedent, this court holds that the discovery rule is inapplicable to plaintiff's cause of action for unlawful employment discrimination under 42 U.S.C. § 1981. The plaintiff was always aware of his wage rate through June 4, 2002, even if it may have been calculated in a discriminatory manner, and the date when he learned that he may have suffered discrimination in pay is irrelevant. *See Pacheco*, 966 F.2d at 906. Consequently, plaintiff's disparate pay claim, asserted more than four years after the latest possible time it could have accrued, is barred by limitations.

### c. Conclusion

Under a general application of § 1658's four-year limitations period, plaintiff's pay discrimination claim is untimely, and as explained above the discovery rule is inapplicable to the facts of this case. Accordingly, on the issue of disparate pay, the defendant's objection to the magistrate's recommendation will be sustained, and summary judgment will be granted.

## 2. Retaliation

Defendant also objects to the magistrate's findings on plaintiff's *prima facie* case and the possible pretextual motive for plaintiff's shift change. After considering the objection, response, and reasoning of the magistrate, the court finds that genuine issues of fact remain on the contested elements of plaintiff's retaliation claim. In light of the Supreme Court's recent clarification of the basis for such claims, the court cannot find as a matter of law that a reasonable employee would not consider the defendant's shift change "materially adverse," i.e. an action which would dissuade a reasonable worker from making or supporting a charge of discrimination. *See Burlington N. & Santa*

*Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006).  Further, given that the defendant purportedly transferred the plaintiff from the day to night shift to catch up on furnace surveys, and then back to the day shift again for the same reason, a fact issue remains on whether this explanation is actually pretext for retaliation.  Accordingly, defendant's objection on the retaliation issue will be overruled, and summary judgment will be denied.

### B. Plaintiff's Objection

Plaintiff in turn objects to the magistrate's recommendation that the court should dismiss Malone's failure to promote claim.  The magistrate found that this claim would have been actionable under *Patterson*'s interpretation of § 1981, and thus is subject to a two-year limitations period.  Because plaintiff did not assert a failure to promote claim until more than two years after the allegedly discriminatory decision was made, the magistrate recommended the dismissal of this claim.

The *Patterson* Court held that "whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer."  *Patterson*, 491 U.S. at 185.  The CRA did not overturn this holding; rather, Congress expanded the definition of § 1981's language to include claims for discrimination outside the formation of a contract, which the *Patterson* Court specifically disclaimed in a separate holding by the Court.  Thus, *Patterson*'s interpretation of when a promotion claim is actionable is still good law.  Here, the crux of the debate before the court is whether alone's promotion rises to the level of a "new and distinct relation between the employee and the employer." *Patterson*, 491 U.S. at 185.  If so, then the defendant's refusal to promote and "enter the new contract" was actionable under the original version of § 1981 and subject to the two-year statute of limitations.  See *id.*; *Jones*, 541 U.S. at 382–83; *White v. BFI Waste Servs., Inc.*, 375 F.3d 288, 291–92 (4th Cir. 2004).  Otherwise, if a new contract was not formed, Malone's claim could only

10

be brought under § 1981(b) and is subject to § 1658's four-year limitations period. *White*, 375 F.3d at 291–92.

"Determining whether a promotion would create a 'new and distinct relation' requires a fact-specific examination into employee's duties, pay, and responsibility before and after the promotion." *See Johnson v. Uncle Ben's Inc.*, 965 F.2d 1363, 1370 (5th Cir. 1992) (citing *Harrison v. Assocs. Corp. of N. Am.*, 917 F.2d 195, 198 (5th Cir. 1990)). This inquiry is layered with nuance and is incapable of blanket prescriptions. "At the least, 'routine increases in salary and responsibility which are clearly part of an original contract of employment' do not signal a new employment relation." *Johnson*, 965 F.2d at 1370 (quoting *Harrison*, 917 F.2d at 198).

In the case at bar, the plaintiff's testimony establishes as a matter of law that his contemplated promotion would have formed a new contract with his employer. He admits that the promotion from Pyrometry Technician to a Quality Control Assistant would have entailed greater responsibilities and was considered a "significant advancement" within Bodycote. *See* Dkt. 106, Ex. A at 271, l. 23; 273, l.19–20 (explaining that there "was a significant difference in [his then-present] position and the quality supervisor position"). These added responsibilities, coupled with an increase in his hourly wage, would have entailed a qualitative change in his employment beyond the "routine increase in salary and responsibility" described in *Harrison*. 917 F.2d at 198. Accordingly, the court agrees with the magistrate's cogent determination that because the applied-for position "was in the nature of a new contract, the claim arises under the pre-1991 version of 42 U.S.C. § 1981." *See* Dkt. 131 at 28. In contradistinction to the disparate pay claim analyzed above, plaintiff's promotion claim arises under an Act of Congress enacted before December 1, 1990 and is subject to the two-year statute of limitations prescribed by Texas law. *See Jones*, 541 U.S. at 383–84.

11

At the earliest, plaintiff asserted a § 1981 claim in June 2004, more than two years after the denial of his promotion in January 2002. *See* Dkt. 106, Ex. A at 252–53. Thus, this claim is barred by limitations. Plaintiff's objection to the magistrate's finding will be overruled, and summary judgment will be granted in favor of the defendant on plaintiff's failure to promote claim.

### IV. Conclusion

For the reasons explained above, the magistrate's memorandum and recommendation (Dkt. 131) is ADOPTED IN PART. The defendant's objection to the magistrate's recommendation that the disparate pay claim should proceed is SUSTAINED due to limitations. All other objections by both parties are OVERRULED. Consequently, the defendant's motion for summary judgment (Dkt. 106) is GRANTED IN PART and DENIED IN PART.

Docket call for this case is reset for October 26, 2007, at 10 a.m. Plaintiff's case will proceed to trial on the following claims under 42 U.S.C. § 1981: (1) racial harassment and hostile work environment; and (2) retaliation.

Signed at Houston, Texas on September 4, 2007.

_____
Gray H. Miller
United States District Judge